# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-07-00434-CR

**Rodolfo Orive, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-06-204579, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury found appellant Rodolfo Orive guilty of murder and assessed his punishment at forty years' imprisonment. *See* Tex. Penal Code Ann. § 19.02 (West 2003). In two points of error, appellant contends that his trial counsel was ineffective and that the district court erred by overruling his motion for new trial without a hearing. We overrule these points of error and affirm the conviction.

On the evening in question, several people including appellant were gathered on the grounds of an Austin middle school practicing dances for an upcoming quinceanera. A car drove past the school, and hand signs were exchanged between the occupants of the car and appellant. The driver of the car, Vidal Lopez, told his companions that he had had problems with appellant in the past. Although his friends urged him to drive on, Lopez decided to stop and confront appellant. When they saw Lopez stop, appellant and two of his friends, Froylan Padilla and Victor Sarmiento, ran to appellant's car, retrieved a pistol belonging to Sarmiento, and returned to the rehearsal scene.

After stopping, Lopez and two of his companions approached the quinceanera group and announced that Lopez wanted to fight appellant. Appellant accepted the challenge. It was agreed that this would be a "clean fight" with no weapons. The combatants and a number of spectators moved to the rear parking lot of the school, and the fight commenced. Lopez soon got the upper hand, forcing appellant to his knees and placing him in what was described as a head lock or choke hold. Some witnesses testified that appellant's face was turning purple and that he appeared to have trouble breathing. Another witness testified that appellant's life did not appear to be in danger, although he was clearly losing the fight. Appellant himself testified, "I couldn't talk, I couldn't breathe, I couldn't do anything. I was afraid for my life."

At this point, Padilla walked over to the two fighters, pointed Sarmiento's pistol at Lopez, and ordered him to release appellant. Lopez complied with this order. Appellant then stood, took the pistol from Padilla, and fatally shot Lopez just below his right eye. Appellant testified that he shot Lopez because he was "afraid for [his] life." According to appellant, Lopez told him that "if we would not shoot him, he was going to do it to us," and put his hand behind his back. Appellant testified that he believed that if he did not shoot Lopez, Lopez would shoot him. Other witnesses testified that they did not hear Lopez say anything to appellant, and there is no evidence that Lopez or anyone with him was armed. One witness testified that appellant told Lopez "you are now f---ed" before shooting him.

Appellant and Padilla left the scene in a black car and drove to a house a few blocks away, where they were seen speaking to a man and walking to the side of the house before running away on foot. Police later found several bullets under the air conditioning unit at the side of this house. Near midnight, appellant and Padilla went to the home of Luz Marie Gallego, the mother of

2

appellant's former girlfriend. Gallego testified that appellant "looked bad" and that "[h]e couldn't speak very well." Appellant told Gallego that he had "killed a guy" and was thinking of going to Mexico. Appellant and Padilla were arrested later that night when a Jeep Cherokee in which they were occupants was stopped for speeding. Both men gave false names to the officers. Several packed suitcases were found in the Jeep.

There is evidence that the fight and resulting shooting were gang-related. Appellant, Padilla, and Sarmiento were wearing blue clothing at the middle school. Austin police officers familiar with gang activity testified that blue is a color favored by a gang known as the South Side Crips. Lopez was wearing red shoes, suggesting that he was a member of a different gang. One of the persons who was in the car with Lopez testified that on the night following the shooting, appellant called him on the telephone and told him that "I shouldn't say anything and that I should tell my friends that they should say nothing either because if somebody went down on his side they were also going to go down on our side."

Appellant's bedroom was searched following his arrest. The officer who conducted the search testified that the room was decorated primarily in blue and recalled finding seven or eight blue bandannas; there was testimony that members of the Crips wore such bandannas to show their gang affiliation. In a notebook, appellant had written "vistazo Bloods," which the officer translated as "looking for blood," and "BK all day every day." The officer testified that "BK" was shorthand for "blood killer," a term commonly used by Crips. In his own testimony, appellant denied being a member of the Crips or any other gang.

In his first point of error, appellant contends that his trial counsel was ineffective because he did not ask for a jury charge on the affirmative defense of duress. *See* Tex. Penal Code

Ann. § 8.05 (West 2003). To prevail on this claim, appellant must show that counsel's failure to request a duress instruction was an error so serious that counsel was not functioning effectively, and that the error prejudiced appellant's defense to such a degree that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App. 1999). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

A defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of the strength of that evidence. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987). Appellant urges that, in this case, the duress defense was raised by his testimony describing Lopez's threat to shoot him and his belief that Lopez would kill him if he did not shoot Lopez.

The duress defense applies when "the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another." Tex. Penal Code Ann. § 8.05(a) (West 2003). "Imminent" means something that is impending, not pending; something on the point of happening, not about to happen. *Schier v. State*, 60 S.W.3d 340, 343 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). Harm is imminent when there is an emergency situation and it is immediately necessary to avoid that harm; when a split-second decision is required without time to consider the law. *Id.* A person is compelled to act within the meaning of the duress defense only if confronted by force or threat of force that would render a person of reasonable firmness incapable of resisting the pressure. Tex. Penal Code Ann. § 8.05(c).

4

We believe that appellant's trial attorney could have reasonably concluded that appellant's testimony did not raise the duress defense. The only compulsion testified to by appellant was his fear that Lopez was going to kill him. Counsel could have reasonably concluded that the trial court's instructions to the jury on the use of deadly force in self-defense and in defense of a third person more closely conformed to appellant's testimony, and that these defenses were more favorable to appellant than the duress defense because the State had the burden of disproving them. *See* Tex. Penal Code Ann. § 9.32 (West Supp. 2008), § 9.33 (West 2003). Moreover, in light of the jury's implicit finding beyond a reasonable doubt that appellant did not shoot Lopez in self-defense or in defense of Padilla, there is no likelihood that the jury would have found by a preponderance of the evidence that appellant shot Lopez under duress. Appellant has not shown that trial counsel's performance was ineffective. Point of error one is overruled.

Appellant's second point of error is that the trial court erred by failing to conduct a hearing on appellant's motion for new trial, which was overruled by operation of law. *See* Tex. R. App. P. 21.8. A defendant is entitled to a hearing on his motion for new trial if the motion and supporting affidavits raise matters not determinable from the record on which he would be entitled to relief. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). A hearing is not required when the matters raised in the motion for new trial are subject to being determined from the record. *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993). The denial of a hearing on a motion for new trial is reviewed for an abuse of discretion. *Wallace*, 106 S.W.3d at 108.

Appellant's motion for new trial alleged that the jury's verdict was contrary to the law and the evidence, and that appellant's trial counsel was ineffective for having failed "to establish facts, and to submit a jury charge on duress or self defense." The supporting affidavit, by the

5

attorney representing appellant on appeal, recited that appellate counsel had discussed the case with appellant and believed that appellant "could establish grounds to submit a jury charge on duress or self defense. Mr. Orive explained that at the time of the incident he was in fear of imminent death [or] severe bodily injury."

The claim that the verdict was contrary to the law and the evidence was not supported by the affidavit and was in any event determinable from the record. Contrary to the allegations in the motion and affidavit, appellant testified at trial that he was in fear of imminent death when he shot Lopez, and this self-defense claim was submitted to the jury (as was the claim that he shot Lopez in defense of Padilla). As we have explained, appellant's testimony did not raise the issue of duress, and neither the motion nor the affidavit claim that there was any other evidence warranting a duress instruction that counsel could have presented. On this record, the trial court has not been shown to have abused its discretion by allowing the motion for new trial to be overruled without a hearing. Point of error two is overruled.

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: December 31, 2008

Do Not Publish